**UNITED MINE WORKERS OF AMERICA, Petitioner,**

v.

**FEDERAL MINE SAFETY & HEALTH REVIEW COMMISSION, Respondent,**

Kitt Energy Corporation, Intervenor.

No. 84–1428.

United States Court of Appeals, District of Columbia Circuit.

Argued April 29, 1985.

Decided Aug. 2, 1985.

Dennis D. Clark, Washington, D.C., with whom Michael H. Holland and Mary Lu Jordan, Washington, D.C., were on brief, for petitioner.

Linda L. Leasure, Atty. Dept. of Labor, Arlington, Va., with whom Cynthia L. Attwood, Associate Sol., Arlington, Va., and Michael A. McCord, Counsel, Dept. of Labor, Washington, D.C., were on brief, for amicus curiae, Dept. of Labor, urging reversal.

Bronius K. Taoras, Meadow Lands, Pa., for intervenor.

James A. Lastowka, Washington, D.C., entered an appearance for respondent Federal Mine Safety & Health Review Comn.

Before ROBINSON, Chief Judge, GINSBURG, Circuit Judge, and WEIGEL, Senior District Judge.*

Opinion for the Court filed by Senior District Judge WEIGEL.

WEIGEL, Senior District Judge:

This case arises from a citation issued by a Mine Safety and Health Administration (MSHA) inspector on December 1, 1982, to Kitt Energy Corporation (Kitt) at its Kitt No. 1 Mine, a large underground coal mine located in Barbour County, West Virginia. Issued pursuant to Section 104(d)(1) of the Federal Mine Safety and Health Act of 1977 (the Act), 30 U.S.C. § 814(d)(1) (1982), the citation alleged that Kitt had failed properly to guard certain moving machine parts. After determining that there had been no complete regular inspection of the mine since Kitt had last been issued a withdrawal order, the inspector modified the citation to a Section 104(d)(2) order of withdrawal.

After an administrative law judge of the Federal Mine Safety and Health Review Commission (Commission) upheld the withdrawal order, Kitt petitioned for discretionary review by the Commission itself. The Commission overturned the order. It noted that there had been multiple inspections of the Kitt No. 1 Mine since the prior withdrawal order and held that the Secretary of Labor had failed to meet his burden of proving that there had been no intervening "clean" inspection of the mine as required under Section 104(d)(2). 30 U.S.C. § 814(d)(2).

The collective bargaining representative of the miners at the Kitt No. 1 Mine, the United Mine Workers (UMWA), which was not a party to the proceedings below, now petitions for review of the Commission decision. The Secretary of Labor appeared as *amicus curiae*.

STATUTORY FRAMEWORK

This case involves the proper interpretation of Section 104(d)(2) of the Act, 30 U.S.C. § 814(d)(2). This section is part of a comprehensive legislative scheme which empowers the Secretary of Labor to promulgate mandatory health and safety standards for mines and requires the Secretary, acting through MSHA, to conduct mine inspections.

Section 103(a) of the Act, 30 U.S.C. § 813(a), requires the Secretary to conduct frequent inspections of mines to determine if they are in compliance with mandatory health and safety standards. For underground coal mines, the inspections must include four "regular" inspections each year, during which the mine is inspected in its entirety. In addition, Section 103(a) requires the Secretary to "develop guidelines for additional inspections of mines." Pursuant to these guidelines, the Secretary of Labor conducts numerous "spot" inspections, also known as special or technical inspections, which focus on particular kinds of safety hazards (electrical, structural, mechanical, toxic fumes, etc.).

When an inspection reveals that a mine operator has violated the Act or a mandatory health or safety standard thereunder, the Secretary must, "with reasonable promptness, issue a citation to the operator" which must "fix a reasonable time for the abatement of the violation." Section 104(a), 30 U.S.C. § 814(a).

Under section 104(d) of the Act, 30 U.S.C. § 814(d), the Secretary is required specially to note when a violation is "caused by an unwarrantable failure of [the mine] operator to comply with ... mandatory health and safety standards." An "unwarrantable failure" citation commences a probationary period: If a second violation resulting from an "unwarrantable failure" is found within 90 days, the Secre-

---

* The Honorable Stanley A. Weigel, Senior District Judge for the United States District Court for the Northern District of California, sitting by designation pursuant to 28 U.S.C. § 294(d).

tary must issue a "withdrawal order" requiring the mine operator to remove all persons from the area (except those needed to fix the problem) until the violation has been abated. Such withdrawl orders are among the Secretary's most powerful instruments for enforcing mine safety.

Once a withdrawal order has been issued, *any* subsequent unwarrantable failure results in another such order. This "chain" of withdrawal order liability remains in effect until broken by an intervening "clean" inspection. That is, "an inspection of such mine [which] discloses no similar violations." 30 U.S.C. § 814(d)(2).

## THE PRESENT PETITION

Before the Commission, the Secretary argued that only a complete regular inspection could constitute an intervening "clean" inspection sufficient to break a withdrawal order liability "chain." The Commission rejected this argument, ruling that a "clean" inspection could be comprised of any type of inspection ("regular" or "spot") or any combination of various inspections, so long as the mine was completely inspected.[1] On this basis, the Commission reversed the withdrawal order, holding:

> Because of his view that a complete regular inspection was necessary to remove the operator from the effect of section 104(d)(2), maintained despite *CF & I, U.S. Steel,* and *Old Ben* [*see supra,* note 1], the Secretary did not attempt to establish that portions of Kitt's mine had gone uninspected since the issuance of the [previous withdrawal] order. Therefore, the Secretary failed to establish an essential element of his prima facie case.

*Secretary of Labor v. Kitt Energy Corp.,* mem. op. at 6 (July 18, 1984), reprinted in Joint Appendix (J.A.) at 100.

In this appeal, neither the UMWA nor the Secretary of Labor any longer argues that only a complete regular inspection can break a withdrawal order liability "chain." They acknowledge that portions of regular inspections, as well as spot inspections, can break the "chain" if these inspections, cumulatively, cover the entire mine and examine for all hazards.

However, the UMWA and the Secretary read the Commission's decision as holding that an inspector's physical presence in each area of the mine—regardless of the object of the inspection or the hazards actually examined for in each particular area—qualifies as an intervening "clean" inspection. Based on this reading, they request this Court to reverse the Commission's decision and remand the case for renewed consideration.

While portions of the Commission's decision appear to support such a reading,[2] we do not attribute to the Commission such a mechanical interpretation of the statute. The Commission is well aware that many, if not most, safety hazards in a mine are neither obvious nor even visible.

To cite some examples: To determine whether a mine is complying with its roof control plan, an inspector generally must consult a copy of that plan—merely walking through the mine tells him nothing. To determine whether there are unsafe concentrations of gases or dust an inspector must employ special monitoring equipment. Likewise, an electrical inspector may notice a mechanical violation[3] that is out in the open, but an inspector examining a mine's

---

**1.** This was consistent with Commission precedent. *See Old Ben Coal Corp.,* 3 FMSHRC 1186 (May 18, 1981); *U.S. Steel Corp.,* 3 FMSHRC 5 (January 9, 1981); *CF & I Steel Corp.,* 2 FMSHRC 3459 (December 2, 1980).

**2.** The Commission wrote:
   The fact that during a particular inspection an inspector may give emphasis to particular types of hazards does not serve to place blinders on the inspector or prevent the issuance of

citations for other violations. For example, an inspector is required to cite roof control violations he observes even if he is present for an electrical inspection.

Secretary of Labor v. Kitt Energy Corp., *supra,* mem. op. at 4, reprinted in J.A. at 98.

**3.** The mechanical violation that triggered the withdrawal order under review was cited by an inspector conducting an "electrical" spot inspection.

roof support system is unlikely to open an electrical junction box to see whether the wiring inside is safe.

Congress' intent was that the withdrawal order liability "chain" should remain in effect "until an inspection of the mine in its entirety shows 'no similar violations.'" S.Rep. No. 181, 95th Cong., 1st Sess. 31 (1977), U.S.Code Cong. & Admin.News, 1977 p. 3401. The Mine Act provides for safeguards against unseen, as well as visible, hazards. To hold that the Secretary need only inspect for obvious hazards to break the "chain" would disregard those safeguards.

The only rational reading of the intervening "clean" inspection requirement is that all areas of a mine must be inspected for all hazards during the time period in question—a question to be decided on a case-by-case basis. We find no indication that the Commission has adopted any different interpretation of Section 104(d).

Accordingly, UMWA's petition is denied.