Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 12, 2004      Decided February 24, 2004

No. 03-1070

SECRETARY OF LABOR,
PETITIONER

v.

OHIO VALLEY COAL COMPANY AND
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION,
RESPONDENTS

———

On Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission

———

*Robin A. Rosenbluth*, Attorney, U.S. Department of Labor, argued the cause for petitioner. With her on the briefs was *W. Christian Schumann*, Counsel.

*Melanie J. Kilpatrick* argued the cause for respondent. With her on the brief was *Marco M. Rajkovich, Jr.*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: Edwards, Sentelle, and Tatel, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Edwards.

Edwards, *Circuit Judge*: This case arises out of a fatal accident in a mine owned and operated by the Ohio Valley Coal Company ("Ohio Valley"). Thomas Ciszewski, a mine belt foreman for Ohio Valley, had his arm severed by moving machinery while he was assessing necessary maintenance and repairs on the equipment. The injury resulted in his death shortly after the accident. The Department of Labor's Mine Safety and Health Administration ("MSHA") issued a citation against Ohio Valley for violating a regulation providing that "repairs or maintenance shall not be performed on machinery until the power is off and the machinery is blocked against motion." 30 C.F.R. § 75.1725(c) (2003). The Federal Mine Safety and Health Review Commission ("FMSHRC" or "Commission") vacated the citation, holding that Mr. Ciszewski did not violate the regulation because he was not performing repair or maintenance when he was injured. *Sec'y of Labor v. Ohio Valley Coal Co.*, 24 F.M.S.H.R.C. 1072, 1077 (2002). The Secretary of Labor ("Secretary") petitions for review of the Commission's decision, claiming that the disputed safety standard clearly applies when a miner is at the location of running machinery to assess what repair or maintenance is necessary to correct an apparent problem. We defer to the Secretary's reasonable interpretation of the regulation and grant the petition for review.

## I. Background

### A. Statutory Background

The Mine Safety and Health Act ("Mine Act" or "Act"), 30 U.S.C. § 801-962 (2000), authorizes the Secretary of Labor to promulgate mandatory health and safety standards for the nation's mines. *See* 30 U.S.C. § 811. The Mine Safety and Health Administration acts on behalf of the Secretary to assure compliance with these health and safety standards by issuing citations for violations. *See* 30 U.S.C. § 814(a). MSHA also investigates mine accidents to determine the

cause and the means of preventing recurrence. *See* 30 U.S.C. § 813(d). The Federal Mine Safety and Health Review Commission adjudicates disputes arising under the Act, *see* 30 U.S.C. § 823, including challenges by mine operators to citations issued by the Secretary of Labor. *See RAG Cumberland Res. LP v. FMSHRC*, 272 F.3d 590, 595 (D.C. Cir. 2001).

At issue in this case is the interpretation of a safety regulation addressing repairs and maintenance on moving machinery. The regulation states that

> [r]epairs or maintenance shall not be performed on machinery until the power is off and the machinery is blocked against motion, except where machinery motion is necessary to make adjustments.

30 C.F.R. § 75.1725(c).

## B.  Factual Background

The facts in this case are largely undisputed and set forth in full in the Commission's decision. *See Ohio Valley Coal Co.*, 24 F.M.S.H.R.C. at 1072-74. We will therefore only briefly summarize the facts before turning to the issues presented by the petition for review. The Ohio Valley Coal Company owns and operates Powhatan No. 6 Mine, an underground coal mine in Belmont County, Ohio. Thomas M. Ciszewski, a belt foreman employed by Ohio Valley, was responsible for the operation of the belts at the Powhatan No. 6 Mine. On April 19, 2001, at around 5:15 p.m., Ohio Valley's pre-shift examiners heard a flapping noise near the stationary take-up roller at break 62 while examining the Second Main North Belt. They reported that the guarding around the belt take-up unit was in place; but they did not report the noise. *Ohio Valley Coal Co.*, 24 F.M.S.H.R.C. at 1072-73; *see also* Joint Stipulation of Facts ("Joint Stip.") ¶¶ c, k-n, u-v, mm, Joint Appendix ("J.A.") 198–200.

At around 8:30 p.m. on April 19, two belt repairmen for Ohio Valley performed some repairs on the First Main North belt wings, near break 61. After finishing the repairs, they heard a voice calling for help nearby. They then saw a man

4

stagger and fall. They ran to the man and found Thomas Ciszewski on the ground, missing his left arm, and suffering facial cuts. One repairman went to the accident site and found the arm lying outside the guarding in the walkway on the return side of the Second Main North belt conveyor. He brought the arm back to where Ciszewski had fallen. At 9:00 p.m., Ciszewski was pronounced dead. *Ohio Valley Coal Co.*, 24 F.M.S.H.R.C. at 1073; *see also* Joint Stip. ¶¶ o, t, aa, cc, J.A. 199–201.

MSHA was notified of the accident at 9:20 p.m., and an initial response team arrived at the mine at 10:15 p.m. The response team then investigated the accident, taking photographs and measurements, and making drawings. The investigation was continued the following day. The MSHA investigators ultimately determined that a grease hose was inadvertently wrapped around the shaft of the stationary take-up roller on the track side of the belt, causing the flapping noise that had been heard by the pre-shift examiners. They reported that the guard panels that had been in place during the pre-shift examination had been removed. On the basis of their investigation, the MSHA team concluded that, while assessing the problem, Ciszewski's left arm had contacted and gotten caught in the pinch point between the moving belt and the stationary roller of the belt take-up unit. *Ohio Valley Coal Co.*, 24 F.M.S.H.R.C. at 1074; *see also* United States Dep't of Labor, Mine Safety and Health Administration, Report of Investigation (Aug. 9, 2001) at 6, J.A. 228.

MSHA issued two citations to Ohio Valley for violations of the Secretary of Labor's mine health and safety standards and sought a penalty of $50,000. Ohio Valley conceded the first citation, for removing the guarding on the belt drive, in violation of 30 C.F.R. § 75.1722(a). *See Ohio Valley Coal Co.*, 24 F.M.S.H.R.C. at 1075. However, the company challenged the second citation, issued pursuant to 30 C.F.R. § 75.1725(c), charging that Mr. Ciszewski had attempted "to assess or repair maintenance (noise) problem on the return walkway side of the belt take-up stationary roller" while the belt and take-up unit were still in operation and not blocked against

motion.  *See* United States Dep't of Labor, Mine Safety and Health Administration, Citation/Order 7089484 (May 31, 2002) at 2, J.A. 212.

The Commission subsequently vacated the § 75.1725(c) citation, holding that the regulation did not apply to Mr. Ciszewski's situation.  The FMSHRC found, and the Secretary does not dispute, that Ciszewski was "assessing the situation to determine what repairs were needed."  *Ohio Valley Coal Co.*, 24 F.M.S.H.R.C. at 1077.  Based on this finding, the FMSHRC concluded that the "plain and unambiguous" language of the regulation, prohibiting the performance of repairs or maintenance while the power was on, did not extend to "assessing what repair or maintenance is needed."  *Id.*  The Secretary of Labor now petitions this court for review of the FMSHRC's decision vacating the citation.

## II.  ANALYSIS

### A.  Standard of Review

"The legislative history of the Mine Act indicates that 'the Secretary's interpretations of the law and regulations shall be given weight by both the Commission and the courts.' "  *Sec'y of Labor v. Cannelton Indus., Inc.*, 867 F.2d 1432, 1435 (D.C. Cir. 1989) (quoting S. REP. NO. 95-181 (1977)).  When, as here, the Secretary of Labor and the Commission offer conflicting interpretations of a regulation promulgated by the Secretary under the Mine Act, this court has repeatedly held that the Secretary's position is entitled to the deference pursuant to the standards enunciated in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1983).  *See, e.g.*, *Sec'y of Labor v. Excel Mining, LLC*, 334 F.3d 1, 5-6 (D.C. Cir. 2003); *RAG Cumberland Res. LP*, 272 F.3d at 596; *Akzo Nobel Salt, Inc. v. FMSHRC*, 212 F.3d 1301, 1303 (D.C. Cir. 2000); *Sec'y of Labor v. FMSHRC*, 111 F.3d 913, 916 (D.C. Cir. 1997); *Energy West Mining Co. v. FMSHRC*, 40 F.3d 457, 462 (D.C. Cir. 1994); *Cannelton Indus.*, 867 F.2d at 1435. Therefore, the standard of review in this case is well established and clear:  Under the first step of *Chevron*, this court " 'must give effect to the unambiguously expressed intent of

Congress.'" *Cannelton Indus.*, 867 F.2d at 1435 (quoting *Chevron*, 467 U.S. at 843). But when the statute is silent or ambiguous with regard to the specific issue, this court must determine whether the Secretary's interpretation is "'a permissible construction of the statute.'" *Id.*

The Secretary is entitled to no less deference with respect to interpretations of her own regulations. *See id.* Thus, we have held that, "in the statutory scheme of the Mine Act, 'the Secretary's litigating position before [the Commission] is as much an exercise of delegated lawmaking powers as is the Secretary's promulgation of a . . . health and safety standard,' and is therefore deserving of deference." *Excel Mining, LLP*, 334 F.3d at 6 (quoting *RAG Cumberland LP*, 272 F.3d at 596 n.9). There is no claim here that the Secretary's position is at odds with the Mine Act. Rather, the only issue in this case is whether the Secretary's interpretation of her own regulation rests on a permissible construction of the language of the regulation. And, under well-recognized precedent, we can reject the Secretary's interpretation only if "it is plainly erroneous or inconsistent with the regulation." *See Akzo Nobel Salt, Inc.*, 212 F.3d at 1303.

## B. The Secretary's Interpretation

The Secretary seeks to overturn the Commission's judgment, arguing that the safety standard at 30 C.F.R. § 75.1725(c) clearly applies when a miner is at the location of running machinery to assess what repair or maintenance is necessary to correct an apparent problem. Ohio Valley argues, relying on the Commission's decision, that the plain meaning of the regulation precludes application to such circumstances. We disagree. We uphold the Secretary's interpretation because it is both consistent with the language of the regulation and reasonable.

In holding that the regulation's plain meaning excluded Mr. Ciszewski's situation, the Administrative Law Judge ("ALJ") relied upon definitions of "repair" and "maintenance" in *Walker Stone Co., Inc.*, 19 F.M.S.H.R.C. 48, 51 (1997), which interpreted those terms in a similarly worded regulation.

The ALJ understood "repair" to mean " 'to restore by replacing a part or putting together what is torn or broken: fix, mend . . . to restore to a sound or healthy state: renew, revivify.' " *Ohio Valley Coal Co.*, 24 F.M.S.H.R.C. at 1077 (quoting *Walker Stone*, 19 F.M.S.H.R.C. at 51). He understood "maintenance" to mean " 'the labor of keeping something (as buildings or equipment) in a state of repair or efficiency: care, upkeep . . .' " *Id.* Based on these definitions, the ALJ concluded: "Plainly, [the regulation] connotes action and deals with the physical acts of fixing, mending, or keeping in a state of repair. It follows that it does not include assessing what repair or maintenance is needed." *Id.* at 1077. And, finally, the ALJ relied on a dictionary definition of "perform" as "to carry out or bring about: accomplish, execute. . . ." *Id.* (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 1678 (3d ed. 1993)). Ohio Valley simply adopts the ALJ's definitions of "repair," "maintenance," and "perform," and argues that assessing what repairs are needed is outside the scope of these definitions. *See* Respondent's Br. at 8-9.

The Secretary does not dispute these definitions. *See* Petitioner's Br. at 15-16. She argues that these definitions encompass examining machinery to see what specific acts of repair or maintenance may be needed on the machinery, "when, as here, there is a specific indication that there may be something wrong with the machinery (here the machinery was making an unusual noise)." *Id.* at 16. The Secretary argues that an assessment made under these circumstances constitutes "the labor of keeping [the machinery] in a state of repair," and is therefore consistent with the Commission's definition of "maintenance." *Id.* We agree.

In this situation, Ciszewski's assessment constituted "maintenance," because he was assessing the machinery as part of "maintenance." There is no doubt that Ciszewski examined the running machinery with an aim to correct an apparent mechanical problem. And, in this instance, the assessment took place in a location where a worker's safety might be threatened by running machinery.

Furthermore, the plain meaning of the word "perform" does not exclude the assessment at issue. Maintenance repairs could not be completed without an assessment. In examining the machinery at close range, Mr. Ciszewski was engaging in a physical activity directed at "carry[ing] out," "accomplish[ing]," or "bring[ing] about" the keeping of the machinery in good repair, consistent with the definition of "perform" relied upon by Ohio Valley and the Commission. *See* Respondent's Br. at 8-9; *Ohio Valley Coal Co.*, 24 F.M.S.H.R.C. at 1077. Therefore, the regulation's language does not unambiguously exclude Mr. Ciszewski's actions.

In addition to being consistent with the plain language of the regulation, the Secretary's interpretation of § 75.1725(c) is eminently reasonable. The Secretary does not claim that any idle "assessment" by workers of the state of running machinery is covered by § 75.1725(c); nor does the Secretary claim that routine mine "inspections" that might subsequently lead to maintenance repairs are within the ambit of § 75.1725(c). Accordingly, we uphold the Secretary's "assessment" interpretation only insofar as it applies to factual situations like the one raised in this case.

## III. CONCLUSION

For the foregoing reasons, we grant the petition for review.