# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 16, 2005           Decided June 10, 2005

Nos. 04-1292 & 04-1312

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION
PETITIONER/CROSS-RESPONDENT

v.

TWENTYMILE COAL COMPANY AND
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION,
RESPONDENT/CROSS-PETITIONER

---

On Petitions for Review of an Order of the
Federal Mine Safety and Health Review Commission

---

*Jerald S. Feingold*, Attorney, Secretary of Labor, argued the
cause for petitioner/cross-respondents. With him on the brief
was *W. Christian Schumann*, Counsel.

*Ralph Henry Moore, II* argued the cause for
respondent/cross-petitioner. With him on the brief were *Karen
L. Johnston* and *Trisha L. Culp*.

Before: SENTELLE, RANDOLPH and GARLAND, *Circuit
Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*:  This case comes before us on cross-petitions for review of an order of the Federal Mine Safety and Health Review Commission wherein the Commission ruled that Twentymile Coal Co. ("Twentymile") violated the mandatory training standard set forth at 30 C.F.R. § 48.7(c) (2002), but that the proposed penalty assessment was not issued within a reasonable time.  *Sec'y of Labor v. Twentymile Coal Co.*, 26 F.M.S.H.R.C. 666 (Aug. 12, 2004) ("*Commission Order*").   Because we agree with the Commission that Twentymile did violate the mandatory training standard, we deny Twentymile's petition for review.   But because we disagree with the Commission and hold that the proposed penalty assessment was issued within a reasonable time, we grant the Secretary of Labor's petition for review, vacating the order of the Commission and remanding the matter to the Commission for further proceedings not inconsistent with this opinion.

## I. BACKGROUND

### A. *The Accident & Investigation*

Twentymile operates the Foidel Creek Mine ("the mine"), a large underground coal mine in Colorado.  Among its three hundred miners was Kyle Webb, who had worked on the crew of Matthew Winey for more than four years.  26 F.M.S.H.R.C. at 668.  Winey, in turn, worked under Kevin Olson, acting shift supervisor.  *Id.*

The geological conditions at the mine required that rock sometimes be extracted with the coal. The rock-coal mix was transported away from pure coal extract to prevent accidental commingling. A chute was designed to facilitate the process. The 45-to-50-foot chute, five feet square, was placed in a vertical shaft twelve feet in diameter. The rock-coal mix was dumped into the chute from a conveyer belt, where it fell from one level of the mine to the level below. *Id* at 667. The chunks falling through the chute ranged in diameter from one to eight inches; baffles slowed the fall of the chunks and prevented damage to the box or conveyer belt at the lower level. Miners could maintain the chute by climbing the ladder alongside the chute and opening one of four doors that accessed the inside of the chute. *Id.*

This particular chute was a new addition to the mine at the time of the accident, and differed from pre-existing chutes in that it was "slightly slanted . . . instead of [] complete[ly] vertical," ALJ Tr. 171 (May 29, 2002), but the clearing of chutes in general was nothing new to Twentymile. Other chutes clogged. According to one mine employee, the clogging of chutes was a "recurring problem," happening every four to six months. 26 F.M.S.H.R.C. at 677.

On June 6, 2000, after only ten days of operation, the vertical chute in the mine clogged. *Id.* at 667. Olson assigned Winey to unplug the chute; at some point after this team began working to clear the chute, Webb climbed the ladder and attempted to unclog it. *Id.* at 668. Neither Winey nor beltman Rick Fadely instructed Webb to climb the ladder, and Winey did not ask Webb what he was doing. *Id.*

The material in the chute began to move; Webb fell from the ladder and landed on a platform, and the chute's rock-coal mixture fell upon him. *Id.* Webb was airlifted to a local

hospital where he was treated for "serious, but non-fatal, head injuries." *Id.*

R. Lincoln Derick, the mine's safety manager, was apprised of the incident: he contacted MSHA Inspector Philip Gibson. Both went to the mine with various law-enforcement and mine officials. *Id.* Following a week's investigation, Gibson issued an order, pursuant to Mine Act section 104(g)(1), 30 U.S.C. § 814(g)(1), charging Twentymile with a violation of 30 C.F.R. § 48.7(c), which provides that "[m]iners assigned a new task . . . shall be instructed in the safety and health aspects and safe work procedures of performing such task." Six months later, on January 4, 2001, MSHA issued an accident investigation report. After another seven months had passed, on July 31, 2001, the report and an accompanying assessment report were sent to the U.S. Department of Labor's Assessment Office. On November 9, 2001, MSHA proposed a specific penalty assessment and the case proceeded to trial before an administrative law judge ("ALJ"). 26 F.M.S.H.R.C. at 669-70.

## B. *Proceedings Before the ALJ*

Twentymile filed a notice of contest; on August 1, 2000, the contest was stayed pending issuance of the penalty assessment. Once MSHA issued its proposed penalty assessment in November 2001, the stay was lifted. *See Commission Order*, 26 F.M.S.H.R.C. at 670.

The ALJ held that the clearing of the rock chute constituted a "new task" under 30 C.F.R. § 48.7(c) such that the mine was required to train the workers for the matter prior to engaging the chute. *Twentymile Coal Co. v. Secretary of Labor*, 25 F.M.S.H.R.C. 373 (July 14, 2003) ("*ALJ Order*"). The clearing of the chute was a "task" under section 48.7(c) because it fit the definition provided at section 48.2(f): A "task" is "a work

assignment that includes duties of a job that occur on a regular basis and which requires physical abilities and job knowledge." 30 C.F.R. § 48.2(f). The ALJ held that the clearing of the chute was a matter that would occur on a "regular" basis even though it had not occurred previously at that ten-day-old chute and was not subject to a fixed schedule. *See Commission Order*, 26 F.M.S.H.R.C. at 670; *ALJ Order*, 25 F.M.S.H.R.C. at 383-84.

The violation was deemed "significant and substantial" based on the ALJ finding that there was a reasonable likelihood that the hazard would result in an injury or severe illness. *ALJ Order*, 25 F.M.S.H.R.C. at 385-86. The ALJ ordered a penalty despite the seventeen-month span of time between the Inspector's June 16, 2000 order and the November 9, 2001 MSHA penalty assessment. *Id.* at 386-88. He held that the reasons for delay – to wit, a shift in personnel in MSHA offices and "a failure by the new employee to understand his duties" – were "understandable" and that Twentymile suffered no prejudice from the delay. *Id.* at 387-88. The ALJ reduced the proposed $6,000 penalty to $1,500. *Id.* at 389.

## C. *Proceedings Before the Commission*

Twentymile appealed the ALJ's decision to the Commission. Before the Commission, Twentymile again argued, *inter alia*, that the unclogging of the chute was not a "new task" under sections 48.7(c) and 48.2(f) because it was not a process performed on a regular basis. The Commission accepted the Secretary's argument that substantial evidence supported the ALJ's findings regarding the recurring nature of unclogging the chute. *Commission Order*, 26 F.M.S.H.R.C. at 677. The fact that "[j]ams, clogs, or other failures are, of course, not scheduled events," *id.* at 678, was not fatal to the finding that "the rock chute would reasonably be anticipated to clog or jam on a recurring basis," *id.* The Commission held that

[w]here a task cannot be scheduled, but is reasonably foreseeable as a recurring duty with discrete health and safety concerns, an operator is expected to provide proper planning and communication to ensure that workers performing the task receive appropriate training. To hold otherwise would be to defer training necessary to guard against the hazards associated with the job until an unfortunate experience ratifies the need for task training.

*Id.*

On the question of unreasonable delay between the close of the investigation and the issuance of the civil penalty, however, the Commission reversed the decision of the ALJ. The Commission held that the Secretary failed to show "adequate cause for the delay so as to render it 'reasonable.'" *Id*. at 682-83. The Commission held that "the bulk of the delay" was due to "unexplained delays" and "outright neglect" on the part of the Secretary's personnel. *Id.* at 684. While the Commission admitted that it "could possibly excuse delay in *either* the preparation of the accident report *or* the processing of the proposed penalty, the cumulative effect of the two significant delays" exceeded "reasonable" limits. *Id.* (emphasis in original). Therefore, the Commission "invoke[d] the extraordinary remedy of vacating the civil penalty." *Id.* at 685.

At the oral argument, the Commission raised *sua sponte* the question of whether the section 104(g) order met the requirements of the Mine Act despite its lack of specific identification of the miners subject to its coverage. In the order, the Commission concluded that the miner-specific order issued on June 16, 2000, pursuant to section 104(g) of the Mine Act, 30 U.S.C. § 814(g), was not sufficiently specific; the Commission held that the order was void *ab initio*. *Commission Order*, 26 F.M.S.H.R.C. at 672-75. But instead of vacating the order, the

Commissioners elected to "modify" the section 104(g) order to a section 104(a) citation. *Id.* at 675.

The Secretary requested reconsideration of the Commission's decision, but the request was denied. Twentymile and the Secretary both filed timely petitions for review of the Commission's decision. Those petitions are consolidated before us.

## II. ANALYSIS

### A. *"New Task"*

As noted above, the mine safety regulation at issue requires that "[m]iners assigned a new task . . . be instructed in the safety and health aspects and safe work procedures of the task." 30 C.F.R. § 48.7(c). A "task" is "a work assignment that includes duties of a job that occur on a regular basis and which requires physical abilities and job knowledge." *Id.* § 48.2(f).

The Secretary interprets the "new task" regulations as applying to those work assignments which, despite never having occurred at the particular mine before, are such that a "reasonably prudent operator familiar with the mining industry and the protective purposes of the standard [would] have recognized . . . would occur on a regular basis." Resp. Br. of Sec'y of Labor at 10 (quoting *ALJ Order*, 25 F.M.S.H.R.C. at 383-84).

Twentymile challenges not the Secretary's interpretation of the relevant provisions of the Mine Act, but rather the Secretary's interpretation of the Department of Labor's own regulations. This Court affords great deference to an agency's interpretation of its own regulation: "under well-recognized precedent, we can reject the Secretary's interpretation only if 'it

is plainly erroneous or inconsistent with the regulation.'" *Sec'y of Labor v. Ohio Valley Coal Co.*, 359 F.3d 531, 534-35 (D.C. Cir. 2004) (quoting *Akzo Nobel Salt, Inc. v. FMSHRC*, 212 F.3d 1301, 1303 (D.C. Cir. 2000)). There is no such error or inconsistency in this case. To read the regulation's use of the term "occur" in a way that precludes coverage of events that have not previously occurred yet promise to occur with regularity in the future would lead to absurd results: it would only require mines to train workers for dangerous tasks that have already been undertaken at least once before in the mine. Given the relative rarity of individual types of accidents in any particular mine, combined with the threat of harm inherent in any single occurrence of these rare accidents, this reading of the statute is hardly reasonable in a statutory regime that declares, first and foremost, that "the first priority and concern of all in the coal or other mining industry must be the health and safety of its most precious resource – the miner," and that "there is an urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines in order to prevent death and serious physical harm[.]" Mine Act §§ 801(a), (c), *codified at* 30 U.S.C. § 801.

Twentymile's interpretation of the regulation is particularly untenable because it would render the pertinent regulation a *nullity*. Under that reading of the regulation, the Commission could not require training on the cleaning of the chute until after workers had begun to clean the chute regularly. We cannot take seriously the suggestion that the Commission endorsed a policy promoting that the Twentymile miners attempt work when it is most dangerous: that is, when the miner is utterly ignorant of the task at hand. Such a state of affairs is precisely the situation the Mine Act, and the relevant regulations, have been enacted to guard against. This Court will not adopt an interpretation of a statute or regulation when such an interpretation would render

the particular law meaningless. *Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997); *AT&T Corp. v. FCC*, 394 F.3d 933, 938-39 (D.C. Cir. 2005).

### B. *Penalty*

This question, as opposed to the preceding one, requires that we review interpretation of a statute rather than a regulation. Section 105(a) of the Mine Act provides that "[i]f, after an inspection or investigation, the Secretary issues a citation or order under section 104, he shall, within a reasonable time after the termination of such inspection or investigation, notify the operator . . . of the civil penalty proposed . . . ." 30 U.S.C. § 815(a).

The Secretary interprets this statute as providing that "the termination of the investigation occurred when the accident investigation report" – not the MSHA Inspector's order – "was issued." Pet. Br. of Sec'y of Labor at 43. Admittedly, this is not a formalized statement of statutory interpretation of the sort that usual invokes *Chevron* deference. *U.S. v. Mead Corp.*, 533 U.S. 218, 227-28 (2001). But because "in the statutory scheme of the Mine Act, the Secretary's litigating position before [the Commission] is as much an exercise of delegated lawmaking powers as is the Secretary's promulgation of a . . . health and safety standard, [it] is therefore deserving of deference." *Sec'y of Labor v. Excel Mining, LLC*, 334 F.3d 1, 6 (D.C. Cir. 2003) (quoting *RAG Cumberland Res. LP v. FMSHRC*, 272 F.3d 590, 596 n.9 (D.C. Cir. 2001) (quoting *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 157 (1991))) (quotation marks omitted) (alterations in original).

The Secretary argues that the Commission ignored Supreme Court precedent in refusing to assess a penalty for Twentymile's violation of the relevant standard. In *Brock v. Pierce County* the

10

Court held that Congress's specification of a 120-day period for issuing a final determination on the recovery of funds under the Comprehensive Employment and Training Act did *not* preclude the Secretary from recovering the funds in enforcement of the statutory provisions after the 120-day period lapsed. 476 U.S. 253, 265 (1986). The Court warned that it "would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake." *Id.* at 260. The Court concluded that "[t]he 120-day provision was clearly intended to spur the Secretary to action, not to limit the scope of his authority. Congress intended that the Secretary should have maximum authority to protect the integrity of the program." *Id.* at 265 (quotation marks omitted). And the Court noted recently that not "since *Brock*[,] have we ever construed a provision that the Government 'shall' act within a specified time, without more, as a jurisdictional limit precluding action later." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003) (collecting cases). The Secretary argues that the Commission erred as a matter of law when it purported to prohibit the Secretary's action in a manner explicitly prohibited by the Supreme Court.

But we need not decide this issue, because we again find the Secretary's interpretation concerning the termination of the investigation reasonable.[1] The Commission's position that the investigation ends at the time of the abatement order is clearly erroneous: Section 105 itself includes among the factors to consider in the assessment of a penalty "the demonstrated good faith of the operator charged in attempting to achieve rapid

---

[1] Where the Secretary and the Commission conflict in their interpretations of the statute, we defer to the Secretary who has been empowered by Congress to promulgate regulations under the relevant statute. *Martin*, 499 U.S. at 58.

compliance *after notification of a violation*." 30 U.S.C. § 815(b)(1)(B) (emphasis added). Given that Congress included the response to the investigation among the relevant criteria, we cannot deem it plausible that Congress contemplated that any determination of the reasonableness of time could begin before the determination could be made – that is, before the mine had an opportunity to respond to the order. With that starting point, there is no unreasonable delay, and the Commission's refusal to impose penalty is without foundation. We further note that it would be particularly inappropriate to set aside the Secretary's recommendation for penalty in this case given that Twentymile, after repeated opportunity, has yet to show any prejudice to itself from whatever delay in fact occurred.

## C. *Order Modification*

As noted above, the Commission considered *sua sponte* the requirements of a section 104(g) order and chose to "modify" the order into a section 104(a) citation. Twentymile now objects to this modification. This Court lacks jurisdiction to consider Twentymile's objection because Twentymile did not urge this objection before Commission, either in the original hearing or in a petition for reconsideration after the Commission issued its decision. We cannot consider an "objection that has not been urged before the Commission," 30 U.S.C. § 816(a)(1), absent "extraordinary circumstances," and we see no such circumstances before us.

## III. CONCLUSION

This Court grants the Secretary's petition for review, vacating the order of the Commission and remanding the matter to the Commission for proceedings not inconsistent with the instructions contained within this opinion. Twentymile's petition for review is dismissed.