**EMERALD MINES CO., Petitioner,**

v.

**FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION and the Secretary of Labor, Respondents,**

and

**United Mine Workers of America, Intervenor.**

No. 87–1816.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 28, 1988.

Decided Dec. 6, 1988.

R. Henry Moore, Pittsburgh, Pa., for petitioner.

Mark S. Flynn, Atty., Dept. of Labor, with whom George R. Salem, Solicitor, Allen H. Feldman, Associate Solicitor, and Charles I. Hadden, Deputy Associate Solicitor, Dept. of Labor, Washington, D.C., were on the brief for respondents.

Mary Lu Jordan, Washington, D.C., and Thomas M. Myers were on the brief for intervenor. Michael H. Holland, Washington, D.C., also entered an appearance for intervenor.

Before RUTH BADER GINSBURG, SILBERMAN and DOUGLAS H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Petitioner Emerald Mines Company (Emerald) seeks review of a Federal Mine Safety and Health Review Commission (FMSHRC or Commission) decision interpreting section 104(d) of the Federal Mine Safety and Health Act of 1977 (Mine Act or 1977 Act). The Secretary of Labor (Secretary) issued a citation to Emerald under that section. Emerald challenges the citation on the ground that section 104(d) applies only when an inspector actually observes a violation, not when the inspector investigates a site after the violation has occurred. We find the Commission's decision upholding the citation rational and con-

sistent with the statute; accordingly, we deny the petition for review.

## I. BACKGROUND

The 1977 Mine Act amended the Federal Coal Mine Health and Safety Act of 1969 (Coal Act or 1969 Act). Section 104 of this legislation, designed to check violations of health and safety standards, directs and controls the issuance of citations to mine operators. Section 104(a) of the 1977 Act provides: "If, upon inspection or investigation, the Secretary or his authorized representative believes that an operator of a coal or other mine ... has violated this Act, ... he shall, with reasonable promptness, issue a citation to the operator." 30 U.S.C. § 814(a) (1982). Section 104(d)(1) provides further instructions for certain grave violations caused by "unwarrantable failures":

If, upon any inspection of a coal or other mine, an authorized representative of the Secretary finds that there has been a violation of any mandatory health or safety standard, and if he also finds that, while the conditions created by such violation do not cause imminent danger, such violation is of such nature as could significantly and substantially contribute to ... a coal or other mine safety or health hazard, and if he finds such violation to be caused by an unwarrantable failure of such operator to comply with such mandatory health or safety standards, he shall include such finding in any citation given to the operator under this Act. If, during the same inspection or any subsequent inspection of such mine within 90 days after the issuance of such citation, an authorized representative of the Secretary finds another violation ... to be also caused by an unwarrantable failure ..., he shall forthwith issue an order requiring the operator to cause all persons in the area affected ... to be withdrawn ... until ... such violation has been abated.

*Id.* § 814(d)(1). Once a withdrawal order issues pursuant to the above-quoted instruction, section 104(d)(2) comes into play, and any subsequent "unwarrantable failure" results in another withdrawal order

until "an inspection of such mine discloses no similar violations" and thereby returns the mine clean to the section 104(d)(1) regime. *Id.* § 814(d)(2). Section 107(a) compatibly prescribes that if "upon any inspection or investigation of a coal or other mine ... an authorized representative of the Secretary finds that an imminent danger exists," the representative shall issue a withdrawal order. *Id.* § 817(a).

Section 103 provides for inspections by authorized representatives of the Secretary; section 103(g), in particular, calls for "an immediate inspection" whenever a miner or representative of the miners "has reasonable grounds to believe that a violation ... or an imminent danger exists." *Id.* § 813(g). On July 30, 1985, an inspector received a section 103(g) request, which alleged that there had been an accumulation of methane at an Emerald mine and that the foreman had failed to take appropriate action. Joint Appendix (J.A.) at 145. On July 31 and August 1, the inspector visited the mine, tested the methane monitor, reviewed the methane detector records, and interviewed miners. He determined that on July 29, following the detection of excessive methane levels at Emerald Mine No. 1, the "continuous miner" equipment was not "immediately de-energized." Under the applicable safety standard, 30 C.F.R. § 75.308 (1988), the power to the equipment should have been cut off at once. For Emerald's July 29 violation of the safety standard, the inspector, on August 8, issued a section 104(a) citation. J.A. at 7.

On August 23, the inspector amended the citation to place it under section 104(d). J.A. at 8. Emerald contested this change. An administrative law judge (ALJ) sustained Emerald's objection. The ALJ concluded that an unwarrantable failure finding must rest on an actual observation of the violation, rather than on an investigation performed after the fact. *Emerald Mines Corp. v. Secretary of Labor*, 8 F.M.S.H.R.C. 324, 328 (A.L.J.1986). Intervenor United Mine Workers of America filed a petition for review, and the Commission reversed. 9 F.M.S.H.R.C. 1590 (Rev. Comm'n 1987). For the reasons stated in *Nacco Mining Co. v. Secretary of Labor*, 9 F.M.S.H.R.C. 1541 (Rev.Comm'n 1987), issued the same day, the Commission held that section 104(d) permitted an unwarrantable failure citation under the circumstances presented here. Emerald petitions this court for review.

## II. DISCUSSION

Emerald challenges an agency decision that is entitled to the deference described in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As this court stated in *Simpson v. FMSHRC*, 842 F.2d 453 (D.C.Cir.1988):

> Where the Mine Act is "silent or ambiguous with respect to the specific issue," ... we generally need ask only whether the FMSHRC's interpretation is "rational and consistent with the statute," ... according deference to "reasonably defensible" constructions of the Mine Act by the Commission.[1]

The respect due to FMSHRC is heightened in this case because the Secretary agrees with the Commission. *See id.* at 462–63; S.Rep. No. 181, 95th Cong., 1st Sess. 49, U.S.Code Cong. & Admin.News 1977, p. 3401, 3448 (Secretary's interpretation of the Mine Act should be given weight by the courts).

Emerald plausibly demonstrates no more than that the statutory text is ambiguous, and the legislative history, inconclusive. It appears that Congress did not advert specifically to this particular issue, *i.e.*, whether an unwarrantable failure finding under section 104(d) can be based upon an abated violation. In reviewing agency interpretations of the legislation in question, however, this court has been guided by Congress' broad safety-forcing goals. *United*

---

1. *Simpson*, 842 F.2d at 458 (citations omitted) (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782; *NLRB v. United Food & Commercial Workers Union, Local 2*, 484 U.S. 112, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987); *Boich v.*

*FMSHRC*, 704 F.2d 275, 280, *vacated on other grounds*, 719 F.2d 194 (6th Cir.1983)); *accord United Mine Workers v. FMSHRC*, 840 F.2d 77, 81 (D.C.Cir.1988).

*Mine Workers v. Mine Safety and Health Admin.*, 823 F.2d 608, 617 (D.C.Cir.1987); *United Mine Workers v. Kleppe*, 532 F.2d 1403, 1406 (D.C.Cir.) (discussing the unwarrantable failure provision in particular), *cert. denied*, 429 U.S. 858, 97 S.Ct. 157, 50 L.Ed.2d 135 (1976); *see* S.Rep. No. 181, *supra*, at 31–32. Mindful of those goals and the large deference courts owe to a reading of the Mine Act shared by FMSHRC and the Secretary, we find the Commission's decision "reasonably defensible."

### A. *The Language of Section 104(d) of the 1977 Act*

Emerald derives a plain meaning from two of section 104(d)'s key words, "finds" and "inspection," and from the section's use of the present tense. Key words and tense show, according to Emerald, that Congress meant to confine section 104(d) to violations directly observed—those the inspector can see with his own eyes. The Commission correctly rejected this argument.

#### 1. *"Finds"*

▆ Emerald reads "finds" to mean "discover" or "come upon" by direct observation. Brief of Emerald Mines Company at 18. But neither legislator nor judge is so disciplined in using the term. As the Commission stated:

> In ordinary usage, the [word "finds"] is not confined to the mere accidental discovery of things but extends as well to detection by effort, analysis and study.... In the context of section 104(d), ... "find" is used in an adjudicative sense, meaning that the inspector must *conclude* that an unwarrantable violation has occurred based upon whatev-

er process of discovery or examination may be appropriate.

*Nacco*, 9 F.M.S.H.R.C. at 1550 (emphasis in original); *see also id.* at 1556 (Comm'r Lastowka, concurring) (that "finds" here means determined "through the faculty of mental reasoning" is further indicated by the section 104(d)(1) instruction that the inspector "shall include *such finding* [*s* ] in any citation given to the operator under this Act") (emphasis in original).

Emerald contrasts section 104(a), which authorizes a citation whenever an inspector "believes" an operator has violated the Act. Section 104(d) demands more: the inspector must "find," not merely "believe." Brief of Emerald Mines Company at 19. One can demur to Emerald's argument that " 'find' [when used] in an adjudicative sense implies a greater certitude than 'believes'," *id.;* for even if "find" calls for stronger conviction, it does not follow that on-the-spot observation is either necessary or sufficient to bring about that conviction. Abundant evidence gathered after the fact may convince the inspector that a violation occurred. An on-the-spot observation, on the other hand, may be inconclusive; the inspector may be required to dig deeper before conviction takes hold.

#### 2. *"Inspection"*

▆ Emerald urges us to recognize, in reading the Mine Act, that "inspection" implies the observation of existing conditions, while "investigation" implies the study of past events. Brief of Emerald Mines Company at 20.[2] Emerald contrasts section 104(d), which authorizes citations for "unwarrantable failure" caused violations, found *"upon any inspection,"* with section 104(a), authorizing citations for violations found *"upon inspection or investigation,"* and section 107(a), authorizing

**2.** To support this argument, Emerald notes that section 104(d)(2) authorizes withdrawal orders until "inspection of such mine" discloses no "unwarrantable failure" violations. "Inspection" here, Emerald continues, surely means observation of conditions. *See United Mine Workers v. FMSHRC*, 768 F.2d 1477 (D.C.Cir. 1985). Again, one can demur. What inspection means in the section 104(d)(2) context is not inevitably what is means in other contexts. *See*

Cook, *"Substance" and "Procedure" in the Conflict of Laws*, 42 YALE L.J. 333, 337 (1933) ("The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them, runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against.").

withdrawal orders reactive to an "imminent danger," found *"upon any inspection or investigation." Id.* at 26–27. Congress, Emerald reasons, must be presumed to have omitted "investigation" from section 104(d) purposefully, and courts should not read in what the legislature left out. *Id.* at 27–29. Emerald emphasizes that the 1977 amendments did not change the "upon any inspection" language of section 104(d) (section 104(c) of the 1969 Act), but did change the corresponding phrases in sections 104(a) and 107(a) (section 104(b) and (a), respectively, of the 1969 Act) to read "upon inspection or investigation." *Id.* at 35, 39.

The statute, however, resists such tidy construction. Section 107(a), for example, authorizes withdrawal orders if "upon any inspection or investigation" an inspector "finds that an imminent danger exists." 30 U.S.C. § 817(a) (1982). Section 107(a) unquestionably addresses existing violations only (as Emerald claims, and the Commission denies, section 104(d) does). In the section 107(a) context then, Congress could not have meant to relate "investigation" to an inquiry about past violations. Similarly, the word "inspection" in section 104(d) must cover more than direct observation, for that section becomes operative only when the inspector determines that the violation he has found (1) could significantly and substantially contribute to a safety or health hazard, and (2) was caused by an unwarrantable failure to comply with a standard. Such determinations will generally require an "investigation" into surrounding circumstances.

According to the Commission, the Mine Act insertion of the words "upon inspection or investigation" and "believes" into sections other than 104(d) indicates simply and solely the Senate bill's incorporation of language borrowed from the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651–678 (1982). *Nacco,* 9 F.M.S.H.R.C. at 1549.[3] There is no indication

that the Mine Act meld of OSHA language from the Senate bill and Coal Act language from the House bill was designed to have substantive import. Indeed, the legislative history of section 107 suggests otherwise; despite the use of "inspection or investigation" in the Senate bill,[4] and "any inspection" in the House bill, the Conference Report announced that the "Senate bill and the House amendment stated the identical authority for the Secretary." S.Conf.Rep. No. 461, 95th Cong., 1st Sess. 55 (1977).

We take into account also, as did the Commission in *Nacco,* 9 F.M.S.H.R.C. at 1548; *id.* at 1554–55 (Comm'r Lastowka, concurring), that the inspector in this case came to the mine for a "special inspection" pursuant to section 103(g), 30 U.S.C. § 813(g) (1982), one triggered by request of a representative of the miners. According to Emerald, *see* Brief of Emerald Mines Company at 31–32, the inspection that occurred was improper, because section 103(g)(1) uses the present tense: immediate inspection is the miner's right when the miner (or representative) has reason to believe "that a violation ... exists." We agree with the Commission that no sensible reading of section 103(g) would so shrink the miner's right to call for an inspection:

> There is nothing in the language of section 103(g) that requires the violation to be ongoing when the inspector arrives at the mine site. As a practical matter, the violation may have been corrected shortly after the request of the miners' representative and before the inspector reaches the mine. Yet the inspector is nonetheless on an "inspection" and if he finds that a violation occurred, he may cite it using the full panoply of sanctions available under the Act.

*Nacco,* 9 F.M.S.H.R.C. at 1548.

3. *The Present Tense*

Emerald's principal "present tense" argument trains on the repeated use of that

**3.** *See, e.g.,* S. 717, §§ 102(a), 105(a), 95th Cong., 2d Sess. (1977), *reprinted in* Subcomm. on Labor of the Senate Comm. on Human Resources, 95th Cong., 2d Sess., *Legislative History of the Federal Mine Safety and Health Act of 1977,* at 1110, 1116 (1978) [hereinafter 1977 Legislative History], which contain language parallel to that in OSHA, 29 U.S.C. §§ 655(b), 658(a) (1982).

**4.** S. 717, *supra* note 3, § 108(a), *reprinted in* 1977 Legislative History at 551.

tense in section 104(d)(1) and on the reference in section 104(d)(2) to "the existence" of a violation. Brief of Emerald Mines Company at 21–22. But the statutory language that seemed to the Commission, and seems to us, most telling governs the inspector's response when, "upon any inspection," he "finds that there *has been a violation*." 30 U.S.C. § 814(d)(1) (1982) (emphasis added). As the Commission explained:

> Section 104(d) does not state that enforcement action may be taken only if the inspector finds a violation in progress. Rather, section 104(d)(1) is triggered if an inspector finds that there *"has been a violation."* Use of the present perfect tense of the verb "to be" in this key context denotes a wide, not narrow temporal range covering both past and present violations. Thus, by its own terms, section 104(d)(1) sanctions are applicable to prior as well as existing violations, and nothing in the text of section 104(d)(1) restricts their use solely to ongoing violations.

*Nacco*, 9 F.M.S.H.R.C. at 1546 (emphasis in original).[5]

Emerald also points to the use of the present tense in the legislative history of the 1969 Act.[6] The Conference Committee,

however, *revised* Senate and House versions of the provision that would have required a finding that a standard "is being violated," adopting the "there has been a violation" language instead. Thus the legislative history here cited by Emerald does not advance comprehension of the Coal Act as passed.[7] Emerald adds more cogently that the Conference Report, H.Conf.Rep. No. 761, 91st Cong., 2d Sess. 68, *reprinted in* 1969 U.S.Code Cong. & Admin.News 2582–83, indicates that the Senate bill, which used the "is being violated" language, was adopted with only "technical changes." Reply Brief at 18. Viewing all these references together, we think one may fairly find only that the 1969 legislative history is inconclusive.[8]

B. *The Reasonableness of the Alternative Interpretations*

Having found the language of the Mine Act indecisive with respect to the specific issue Emerald raises, and the legislative history inconclusive, we reach the dispositive question: Is the Commission's interpretation "reasonably defensible" based on its compatibility with the structure of the Mine Act and its consistency with the Act's purpose? Comparing Emerald's proposed

---

**5.** Emerald maintains that use of the present perfect tense generally indicates an action that began in the past but continues into the present. Brief of Emerald Mines Company at 23; Reply Brief at 16–17; *accord Nacco*, 9 F.M.S.H.R.C. at 1562 n. 4 (Chairman Ford, dissenting). The present perfect tense, however, may also cover past actions that have been completed. "To equate the phrase 'that there has been a violation' with the phrase 'that there is a presently existing violation' is to give a tortured rather than a plain reading...." *Nacco*, 9 F.M.S.H.R.C. at 1556 (Comm'r Lastowka, concurring).

**6.** Brief of Emerald Mines Company at 40 (citing H.R. 13950, § 104(c)(1), *reprinted in* Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 94th Cong., 1st Sess., *Legislative History of the Federal Coal Mine Safety and Health Act of 1969 (Public Law 91–173) as Amended Through 1974 Including Black Lung Amendments of 1972*, at 927 (1975) [hereinafter 1969 Legislative History] (using "inspection" and present tense "is being violated")); Reply Brief at 18–19 n. 11 (citing H.R.Rep. No. 563, 91st Cong., 1st Sess. 31, *reprinted in* 1969 U.S. Code Cong. & Admin.News 2534).

**7.** *See* S. 2917, § 302(c)(1), 91st Cong., 1st Sess. (1969), *reprinted in* 1969 Legislative History at 873; H.R. 13950, § 104(c)(1), 91st Cong., 1st Sess. (1969), *reprinted in* 1969 Legislative History at 927.

**8.** Emerald also points to section 108(2) of the 1977 Act, 30 U.S.C. § 818(2) (1982), which provides for injunctive relief when an operator engages in a pattern of violations. The legislative history states that this relief "is designed to deal with this gap in enforcement" for "violations which habitually occur when the inspector is not present in the mine." Brief of Emerald Mines Company at 42 (quoting S.Rep. No. 181, *supra*, at 39, *reprinted in* 1977 U.S. Code Cong. & Admin.News at 3439). Section 108(2), however, deals with a different problem—habitual violations of *any* type—than does section 104(d), which deals only with unwarrantable violations. The "gap" that section 108(2) addresses, in short, is a general one, not the specific past unwarrantable violations reached by section 104(d).

interpretation with the Commission's reading, we find that both interpretations entail anomalies. While neither interpretation fits the legislative text hand in glove, the Commission's reading appears to us at least "reasonably defensible," *i.e.*, not inconsistent "with the language, structure, legislative history, and policy of the Mine Act." *United Mine Workers*, 823 F.2d at 616.

### 1. *Withdrawal Orders*

 Emerald headlines the "time critical nature" of section 104(d)'s withdrawal order sanction. Brief of Emerald Mines Company at 23. The purpose of a withdrawal order is to assure that miners will not continue "to work in the face of hazards." *Id.* at 41 (citing S.Rep. No. 181, *supra*, at 31, *reprinted in* 1977 U.S. Code Cong. & Admin.News at 3431). A withdrawal order remains effective until the violation to which it is directed "has been abated," Emerald observes; such an order reactive to an already abated violation, Emerald asserts, would be "nonsensical," "an utterly futile gesture." *Id.* at 24; Reply Brief at 16.

No withdrawal order is at issue in this case, *see* Brief for Secretary of Labor at 42–43, but the anomaly headlined by Emerald remains relevant to the reasonableness of the Commission's construction of section 104(d). If an operator subject to a withdrawal order is no longer in violation at the critical time, then under the Commission's reading, the withdrawal order would issue and terminate simultaneously. *E.g., Greenwich Colleries, Div. of Pa. Mines*

*Corp. v. Secretary of Labor*, 9 F.M.S.H.R. C. 1601, 1603 (Rev.Comm'n 1987).[9] Such an order would not require the actual withdrawal of miners, but it would not be pointless, for it would serve to place or keep the mine operator on the section 104(d)(2) probationary train.[10]

To the extent that withdrawal orders for completed violations are anomalous, that anomaly remains under Emerald's reading of section 104(d). An "unwarrantable failure" violation, even if directly observed by an inspector, may abate after the inspector leaves the site but before the inspector issues the citation. While Emerald's interpretation does not eliminate the anomaly in theory or in fact, it does draw a line itself susceptible of the characterization "nonsensical": no withdrawal order if the inspector shows up moments after the violation has been abated; withdrawal order if abatement occurs moments after he leaves the site.

 Furthermore, Emerald's interpretation strains the language in section 104(d) that commands the inspector, upon finding an "unwarrantable failure," to "include such finding in any citation given to the operator." "Any citation," as used in this instruction, would appear to include citations for violations that occurred out of the sight of the inspector. *Nacco*, 9 F.M.S.H. R.C. at 1556 (Comm'r Lastowka, concurring). Finally, Emerald concedes that under section 104(a) citations may issue for violations that have abated. Brief of Emerald Mines Company at 32–33. Yet that

---

**9.** The coupling of citation and withdrawal order for a past violation is consistent with Commission precedent. In *United States Steel Corp. v. Secretary of Labor*, 6 F.M.S.H.R.C. 1423 (Rev. Comm'n 1984), the Commission upheld a citation and withdrawal order issued as a result of an "investigation," *id.* at 1427, that took place 18 days after a "failure to take corrective action to remedy the violations," *id.* at 1437, contributed to a truck accident. The inspector issued a citation for a violation of 30 C.F.R. § 55.9–2 (now codified at 30 C.F.R. § 56.9002 (1988)) ("Equipment defects affecting safety shall be corrected before the equipment is used.").

**10.** Withdrawal orders may also endure pending "abatement" in the form of training regarding

practices that will avoid a repeat of the violation. *E.g., White County Coal Corp. v. Secretary of Labor*, 9 F.M.S.H.R.C. 1578, 1579–80 (Rev. Comm'n 1987).

> Abatement of an observed instance of a miner working under unsupported roof normally would involve removal of the miner from the unsafe area and instruction of the miner, and others if appropriate, concerning the need for future compliance with roof control standards. Abatement of a similar, but unobserved, violation necessarily would emphasize the latter.

*Nacco*, 9 F.M.S.H.R.C. at 1559 & n. 4 (Comm'r Lastowka, concurring).

subsection provides that "the citation shall fix a reasonable time for abatement of the violation." 30 U.S.C. § 814(a) (1982). Notably, Emerald does not suggest that the "time critical nature" of this prescription confines section 104(a) to violations ongoing when the inspector visits.

### 2. The Probationary Period

■ Section 104(d) instructs inspectors to issue a withdrawal order if a second unwarrantable violation is found within ninety days of the first citation. Emerald asserts that if unwarrantable failure citations are issued for past violations, the ninety-day probationary period would have no clear reference points. Brief of Emerald Mines Company at 25.

We note first that Emerald's reading of section 104(d) as limited to inspector-witnessed violations does not make operators altogether secure about when the ninety-day period commences. The section provides for a probationary period of "90 days after issuance of [a] citation" containing an "unwarrantable failure" finding. 30 U.S.C. § 814(d)(1) (1982). This language does not start the clock from the date the violation occurred or abated. Instead, it makes the date of the citation critical, a date the Secretary, not the mine operator, can in the first instance control.

Emerald's argument suggests, however, that the opportunity for administrative protraction is far greater if section 104(d) is read to allow unwarrantable failure citations for violations that occurred in the distant past. In the case at hand, the Commission recognized that there was no long delay. The violation occurred July 29, 1985, the original citation issued August 8, and the amendment adding a section 104(d) finding was made August 23. As Commissioner Lastowka noted:

Of course, the Secretary's action in proceeding under section 104(d) is subject to challenge and review, like any other secretarial enforcement action, to determine whether, in a given set of circumstances, the Secretary has acted arbitrarily, capriciously or otherwise not in accordance with law. Considered in the abstract, it may be possible that the Secretary's invoking of section 104(d) sanctions for a violation that occurred far in the past could, depending on the particular factual context, constitute impermissible enforcement action.... This vague specter of possible abuse, however, is a plainly insufficient basis for foreclosing in all circumstances the Secretary's ability to cite past violations under section 104(d).

*Nacco*, 9 F.M.S.H.R.C. at 1560 (Comm'r Lastowka, concurring).

Section 104(a) requires that citations issue "with reasonable promptness," and this requirement could be construed to cover not only the inspection to citation time lag but the violation to citation span as well. In any event, the Secretary is under a general obligation to act reasonably and would not do so were she to resurrect distant violations to place an operator on a section 104(d) chain. A "reasonable promptness" requirement here would comport with, and be no less administrable than, other timely action specifications contained in the Mine Act.[11]

### 3. The Mine Act's Purposes

The Secretary effectively criticizes Emerald's "catch us if you can" interpretation of section 104(d) as inconsistent with the Mine Act's " 'safety-forcing, miner-protective tenor.' " Brief for the Secretary of Labor at 17 (quoting *Simpson*, 842 F.2d at 455). Section 104(d)(1) focuses on the conduct of the operator—its unwarrantable failure to comply with a mandatory health or safety standard. The section reflects a legislative judgment that a special "sanction" (a probationary period with a threat of withdrawal orders) is needed to check such conduct. S.Rep. No. 181, *supra*, at 30, *reprinted in* 1977 U.S. Code Cong. & Admin.News at

---

**11.** *See, e.g.,* 30 U.S.C. § 814(a) (1982) (requiring the citation to fix "a reasonable time" for the abatement of the violation); *id.* § 814(b) (requiring the Secretary "promptly" to issue a withdrawal order if the operator fails to abate within such time); *id.* § 814(d)(1) (requiring the Secretary to issue a withdrawal order "forthwith"); *id.* § 814(d)(2) (requiring the Secretary to issue a withdrawal order "promptly").

3430; *Nacco,* 9 F.M.S.H.R.C. at 1546. Emerald's interpretation diverts attention from the operator's misconduct or lapse to the fortuitous circumstance of whether an inspector happens to be present at the time of the violation. "[W]ithdrawal order liability" is one of "the Secretary's most powerful instruments for enforcing mine safety." *United Mine Workers v. FMSHRC,* 768 F.2d 1477, 1479 (D.C.Cir.1984). The Commission reasonably maintains that this liability should not turn on happenstance.

■ Emerald points to other sanctions in the Secretary's arsenal—pursuit of "penalties up to $10,000," "criminal prosecutions," "injunctive relief." Brief of Emerald Mines Company at 47. Emerald also urges that violations are spotted routinely given "the almost constant inspector presence at mines." Reply Brief at 4. These protestations suggest that were we to hold for Emerald, the consequences would not be as dire as the Secretary and Commission suggest. But the Commission's essential position is not diminished by Emerald's protests. The gravity of the mine operator's conduct does not turn on whether the operator was caught in or after the act. We are satisfied that the Commission's interpretation properly preserves "the unwarrantable failure closure order as an effective and viable enforcement sanction." S.Rep. No. 181, *supra,* at 32, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 3432.

CONCLUSION

For the reasons stated, we hold that the Secretary may make "unwarrantable failure" findings under section 104(d) of the Mine Act for violations that have abated before the inspector arrives at the site. Emerald's petition for review is therefore denied.

*It is so ordered.*