# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 17, 2023        Decided July 5, 2024

No. 22-5334

SANDPIPER RESIDENTS ASSOCIATION, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF HOUSING & URBAN
DEVELOPMENT,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-01783)

*Kimberly Brown Myles* argued the cause for appellants. With her on the briefs were *Velimir Rasic*, *Laura B. Beshara*, and *Michael M. Daniel*.

*Simon C. Brewer*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Abby C. Wright*, Attorney.

Before: WILKINS, KATSAS, and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

2

WILKINS, *Circuit Judge*: Sandpiper Cove, a privately owned apartment complex in Galveston, Texas, is subsidized by the U.S. Department of Housing and Urban Development ("HUD") under the agency's Section 8 project-based rental assistance program. Through that program, HUD works with landlords to reduce residents' rent payments based on residents' ability to pay. Residents and the resident association of Sandpiper Cove (collectively, "Plaintiffs") filed suit against HUD, arguing that the agency had failed to ensure that Sandpiper Cove was maintained in a habitable condition. As a result of the conditions at Sandpiper Cove, Plaintiffs sought to compel HUD to issue so-called "Tenant Protection Vouchers"—vouchers that would allow Sandpiper Cove's tenants to receive rental payment assistance from HUD for use at properties elsewhere.

Congress has authorized HUD to provide tenants like Plaintiffs with Tenant Protection Vouchers, but only under certain circumstances. Specifically, HUD "may" provide vouchers to tenants "where the owner" of the relevant units "has received a Notice of Default and the units pose an imminent health and safety risk to residents." Consolidated Appropriations Act, 2021, Pub. L. No. 116–260, 134 Stat. 1182, 1869 (2020) (the "Act"). Here, when Plaintiffs filed their original complaint, "the owner" of Sandpiper Cove had received a Notice of Default. *Id.* But that owner then sold the property, and the new owner was not issued a Notice of Default. Plaintiffs amended their complaint to reflect the sale. The District Court dismissed Plaintiffs' claims for lack of subject-matter jurisdiction, reasoning that Plaintiffs' claims had been mooted by the sale because, in light of the sale, "the owner" of Sandpiper Cove had not "received a Notice of Default."

Plaintiffs appeal the District Court's dismissal of their claims. We hold that the District Court erred in dismissing Plaintiffs' claims as moot. The question whether Plaintiffs are legally entitled to relief after the sale of Sandpiper Cove goes to the merits of their case, not mootness. Still, although we disagree with the District Court's jurisdictional holding, we nonetheless affirm the District Court's dismissal of Plaintiffs' complaint because Plaintiffs failed to state a claim upon which relief could be granted.

## I.

### A.

In 1974, Congress amended the United States Housing Act of 1937 to establish, among other things, a "lower-income housing assistance" program, Housing and Community Development Act of 1974, Pub. L. No. 93–383, § 201(a), 88 Stat. 633, 662 (1974), designed to "aid[] low-income families in obtaining a decent place to live," 42 U.S.C. § 1437f(a); *see also Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 12 (1993). Through that program, now commonly known as the Section 8 housing program, *see Cisneros*, 508 U.S. at 12, Congress authorized HUD to provide financial assistance payments "with respect to existing housing" to further that goal, 42 U.S.C. § 1437f(a). HUD disburses this financial assistance primarily through two forms of programs: "tenant-based" assistance and "project-based" assistance. *Id.* § 1437f(f)(6)–(7); *see also id.* § 1437f(d)(2), (o); 24 C.F.R. § 982.1(b)(1). Tenant-based assistance is linked to individual households, while project-based assistance is linked to specific housing units. *See* 24 C.F.R. §§ 886.309, 982.1(b).

HUD provides tenant-based assistance through the Housing Choice Voucher Program. *See id.* § 982.1(a)(1).

Under that program, HUD's assistance is linked directly to individual households; households can obtain a housing subsidy from HUD for use on the private rental market. Once participants are admitted to the program, they are responsible for finding a suitable housing unit on the private rental market. *Id.* § 982.1(b)(2); *see also id.* § 982.302(a)–(b). HUD then subsidizes the program participant's rent based on the participant's monthly income, *id.* § 982.1(a)(3); HUD partners with state and local public housing agencies to disburse financial assistance for rent payments directly to owners on behalf of individual families, *see id.* § 982.1(a)(1).

Through HUD's project-based assistance programs, meanwhile, HUD contracts with individual landlords and designates units in particular buildings owned by those landlords as subsidized, project-based assistance units. Landlords select their own tenants. *See* 42 U.S.C. § 1437f(d)(1)(A). Tenants selected by the landlords then "make rental payments based on their income and ability to pay"; HUD, in turn, "makes 'assistance payments' to the private landlords in an amount calculated to make up the difference between the tenant's contribution and a 'contract rent' agreed upon by the landlord and HUD." *Cisneros*, 508 U.S. at 12; *see also* 42 U.S.C. § 1437f(c)(1)(A).

Congress provides funding for HUD's Section 8 programs through annual appropriations legislation, including in the 2021 Consolidated Appropriations Act. *See* 134 Stat. at 1865–99. The Act places certain requirements on HUD and on the landlords who participate in HUD's Section 8 programs. Specifically, the Act requires "[a]ny entity receiving" payments through HUD's project-based assistance program to "maintain decent, safe, and sanitary conditions."

§ 219(a), 134 Stat. at 1897.[1]  HUD, in turn, must ensure that owners of project-based assistance units do not fall short of this requirement.  *See* § 219, 134 Stat. at 1897–98.  To that end, HUD has promulgated regulations requiring participating landlords to "maintain decent, safe, and sanitary conditions," *id.* § 219(a), 134 Stat. at 1897; *see also* 24 C.F.R §§ 5.703, 883.101(a), 886.323(a), and comply with various maintenance- and utilities-related obligations, 24 C.F.R. § 5.703.  As required by the Act, HUD also completes regular inspections of project-based assistance units and notifies owners of any deficiencies identified.  § 219(b)–(c), 134 Stat. at 1897–98; *see also* 24 C.F.R. §§ 5.703, 886.323(c)–(e).

The Act requires HUD to take action when an inspection reveals that a property is not in decent, safe, and sanitary condition.  In that circumstance, HUD must "provide the owner with a Notice of Default with a specified timetable, determined by the Secretary, for correcting all deficiencies." § 219(c)(1), 134 Stat. at 1898.  If an owner does not correct the deficiencies identified in the Notice of Default within the time allotted, HUD may then take a number of enforcement actions, including "requir[ing] immediate replacement of project management," "impos[ing] civil money penalties," or seeking to "stabilize the property" through "transfer of ownership."  § 219(c)(2), 134 Stat. at 1898.

In addition, the Act provides that HUD may directly assist tenants of an affected property by providing them with

---

[1] Prior and subsequent annual appropriations legislation have included materially identical language.  *See, e.g.,* Consolidated Appropriations Act, 2023, Pub. L. No. 117–328, § 219(a), 136 Stat. 4459, 5175 (2022); Consolidated Appropriations Act, 2022, Pub. L. No. 117–103, § 219(a), 136 Stat. 49, 759 (2022); Further Consolidated Appropriations Act, 2020, Pub. L. No. 116–94, § 219(a), 133 Stat. 2534, 3005 (2019).

"Tenant Protection Vouchers" ("vouchers"), which allow a tenant to relocate to a property on the private rental market while continuing to receive a housing subsidy from HUD. Vouchers are a form of tenant-based rental assistance. An individual who has received a voucher may find a landlord on the private market willing to rent to them; HUD then subsidizes their rent based on their ability to pay.

The Act contains a lump sum appropriation that permits HUD to provide individuals with vouchers for a variety of reasons, including to relocate individuals whose housing units are "demolished" and to relocate "witnesses . . . in connection with efforts to combat crime in public and assisted housing." 134 Stat. at 1869. The Act authorizes HUD to provide vouchers to residents of project-based assistance units, but only under certain circumstances:

> [T]he Secretary may provide [S]ection 8 rental assistance from amounts made available under this paragraph for units assisted under a project-based subsidy contract funded under the "Project-Based Rental Assistance" heading under this title where the owner has received a Notice of Default and the units pose an imminent health and safety risk to residents[.]

*Id.* Thus, the Act authorizes HUD to provide vouchers to tenants receiving project-based rental assistance, so long as "the owner" of the relevant units "has received a Notice of Default and the units pose an imminent health and safety risk to residents." *Id.*

**B.**

This case concerns Plaintiffs' efforts to compel HUD to issue them vouchers so that they may move out of Sandpiper Cove while continuing to receive a housing subsidy from HUD. Sandpiper Cove has been subsidized by HUD since 1984. As of March 2015, Sandpiper Cove was owned by Compass Pointe Apartments Texas, LLC ("Compass Pointe").

In May 2019, a HUD inspection of Sandpiper Cove revealed numerous problems with the property, including insect infestations, inoperable kitchen appliances, poor plumbing, and inoperable or missing smoke detectors. As a result of the severity of the deficiencies discovered on the property, and in keeping with HUD's obligations under the Act, *see* § 219(c)(1), 134 Stat. at 1898, HUD issued a Notice of Default to Compass Pointe in which it provided the company sixty days to correct the deficiencies identified.

HUD then worked with Compass Pointe to correct the conditions at Sandpiper Cove. The agency helped Compass Pointe to develop property improvement plans and required it to replace its property management company. Despite those efforts, however, many of the issues identified in the 2019 Notice of Default persisted more than two years later.

In June 2020, Plaintiffs—stuck living at Sandpiper Cove despite the uninhabitable conditions there and frustrated with the slow pace of the planned improvements to the property— filed a complaint in federal district court against HUD, seeking to compel HUD to provide them with vouchers.

In October 2021, at HUD's encouragement, Compass Pointe sold Sandpiper Cove to a new owner, Galveston 3916 Winnie Street GP, LLC ("Winnie Street"). Winnie Street

agreed to allow Sandpiper Cove to remain a project-based assistance property under Section 8 and stated its intention to remedy the numerous issues at the property.

After the sale of Sandpiper Cove from Compass Pointe to Winnie Street, Plaintiffs amended their complaint in November 2021 in response to a motion to dismiss filed by HUD. Plaintiffs' Second Amended Complaint alleges that HUD's failure to provide Plaintiffs with vouchers violates the Administrative Procedure Act, 5 U.S.C. § 706, is inconsistent with HUD's statutory obligations, and constitutes intentional discrimination on the basis of race and ethnicity in violation of the Fifth Amendment of the Constitution and the Fair Housing Act, 42 U.S.C. § 3604(a). Plaintiffs' complaint seeks an injunction compelling HUD to issue vouchers to Sandpiper Cove tenants. On the same day that they filed their Second Amended Complaint, Plaintiffs moved for a preliminary injunction requiring HUD to provide them with vouchers. HUD opposed Plaintiffs' motion for a preliminary injunction and filed a motion to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim for which relief can be granted under Rule 12(b)(6).

The District Court granted HUD's motion to dismiss, concluding that Plaintiffs' claims had been mooted by the sale of Sandpiper Cove to Winnie Street. *Sandpiper Residents Ass'n v. U.S. Dep't of Hous. & Urb. Dev.*, No. 20-1783 (RDM), 2022 WL 1604717, at *15 (D.D.C. May 21, 2022). The District Court explained that, under the Act, HUD is permitted to issue vouchers to individuals like the Plaintiffs only where "the owner" of the relevant units "has received a Notice of Default." *Id.* at *4. When Plaintiffs originally filed their complaint, that requirement had been met: Compass Pointe had received a Notice of Default from HUD. But

Compass Pointe no longer owned Sandpiper Cove. Because Winnie Street—now "the owner" of Sandpiper Cove—had not received a Notice of Default from HUD, the District Court reasoned, HUD no longer had statutory authority to issue vouchers to Plaintiffs, even if it were inclined to do so. *Id.* at *8. The District Court explained that that issue mooted Plaintiffs' claims because the sale of Sandpiper Cove was an intervening event that had rendered it impossible for the District Court to grant Plaintiffs any effective relief. And the District Court concluded that its jurisdictional holding resolved all of Plaintiffs' claims because, while Plaintiffs' complaint had seemed at first glance to challenge more than HUD's decision not to issue Plaintiffs vouchers, the only specific relief Plaintiffs sought was an order compelling HUD to issue Plaintiffs vouchers. *Id.* at *15–16. The District Court also noted that even if Plaintiffs' claims were not moot, Plaintiffs' claims would likely still fail for lack of standing because Plaintiffs had not demonstrated that their claims were redressable. *Id.* at *13.

Plaintiffs now appeal. We review *de novo* the District Court's dismissal for lack of subject-matter jurisdiction. *Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011).

## II.

## A.

We turn first to the question whether the District Court correctly concluded that Plaintiffs' claims were mooted by the sale of Sandpiper Cove.

Article III of the Constitution limits the federal courts to adjudicating only "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "That

limitation requires those who invoke the power of a federal court to demonstrate standing—a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 91 (citation omitted). "But a case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Empls*, 567 U.S. 298, 307 (2012)). This Court must "assume that the plaintiff[s] will 'prevail'" on the merits of their claims unless their arguments that the "relief sought is legally available and that [they are] entitled to it is 'so implausible that it is insufficient to preserve jurisdiction.'" *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019) (quoting *Chafin*, 568 U.S. at 174).

Plaintiffs argue that the District Court erred in holding that their claims were moot. HUD, meanwhile, maintains that Plaintiffs' claims were mooted by the sale of Sandpiper Cove. HUD emphasizes that the Act permits HUD to provide vouchers only if "the owner [of the relevant property] has received a Notice of Default." 134 Stat. at 1869. Because Winnie Street—the current owner of Sandpiper Cove—has not received a Notice of Default, HUD contends that it is impossible for the District Court to "grant any effectual relief" to Plaintiffs. *Knox*, 567 U.S. at 307 (citation and internal quotation marks omitted).

We do not think this case is moot. Here, the relevant facts have not changed such that it is actually "impossible" for any order to remedy Plaintiffs' claimed wrong. *Id.* Plaintiffs continue to live in project-based assistance units at Sandpiper Cove, and they still want HUD to issue them vouchers. HUD still subsidizes rent at Sandpiper Cove under its project-based assistance program, so HUD could take action with respect to the property and its tenants if ordered to do so. And HUD maintains that it does not wish to provide Plaintiffs with vouchers. Thus, this case remains live, and "there is not the slightest doubt that there continues to exist between the parties 'that concrete adverseness which sharpens the presentation of issues.'" *Chafin*, 568 U.S. at 173 (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)).

Further, in evaluating mootness, we must assume that Plaintiffs will prevail on the merits of their claims. Plaintiffs' claims that vouchers remain available to them are facially plausible, and nothing more is required to preserve jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy'" (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974))). With that assumption in mind, the relief Plaintiffs seek—an order requiring HUD to provide them with vouchers—would relieve their claimed injury. This case is, accordingly, not moot.

We think HUD's argument to the contrary "confuses mootness with the merits." *Chafin*, 568 U.S. at 174. HUD's contention is, at bottom, that the sale of Sandpiper Cove

means that HUD no longer has statutory authority to issue vouchers to Plaintiffs. But that is not an argument that this dispute has been extinguished. Rather, HUD's underlying contention is that changed circumstances have doomed Plaintiffs' chances of success on the merits of their claims because the legal relief they seek—an order compelling HUD to issue them vouchers—is no longer available. As the Supreme Court has explained, however, questions regarding the "legal availability of a certain kind of relief" go to the merits of a case, not mootness. *Id.*; *see also, e.g., Powell v. McCormack*, 395 U.S. 486, 500 (1969) (distinguishing between mootness and whether the plaintiff had "established a right to recover"); *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) (noting that subject-matter jurisdiction "presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief"). Indeed, at oral argument, counsel for HUD conceded that this case is moot only if HUD's interpretation of the Act is correct. *See* Oral Arg. Tr. at 11. That is the stuff of the merits, not mootness.

We accordingly hold that the District Court erred in dismissing Plaintiffs' claims as moot.

### B.

HUD contends that even if this case is not moot, this Court still lacks subject-matter jurisdiction over Plaintiffs' claims for a separate reason—that Plaintiffs lack standing because they have failed to demonstrate redressability. We disagree.

As we have explained, "a showing of standing 'is an essential and unchanging' predicate to any exercise of our jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658,

663 (D.C. Cir. 1996) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, a plaintiff "must show (1) an injury in fact that is 'concrete and particularized' and 'actual or imminent'; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 19 (D.C. Cir. 2011).

Relying on this Court's decision in *Marino v. National Oceanic & Atmospheric Administration*, 33 F.4th 593 (D.C. Cir. 2022), HUD argues that Plaintiffs have failed to demonstrate that their claims are redressable. In *Marino*, plaintiffs sued the National Marine Fisheries Service ("NMFS"), seeking to require the NMFS to enforce certain conditions in permits held by SeaWorld. *Id.* at 595. The NMFS had indicated to the plaintiffs that, based on the agency's interpretation of a statute, it believed that enforcing the relevant permit conditions was outside of its jurisdiction. *Id.* The plaintiffs argued that the NMFS's interpretation of the statute was arbitrary and capricious, and requested an order declaring that the NMFS had violated the Administrative Procedure Act and vacating its decision not to enforce the relevant permit conditions. *Id.* at 595–97.

This Court held that the plaintiffs lacked standing because they had failed to show redressability. *Id.* at 596. The Court explained that the relevant statute was "permissive on its face"—it did not *require* the NMFS to enforce the permit conditions. *Id.* at 597. So even if the NMFS had erred in reasoning that it lacked statutory authority to enforce the permit conditions, the NMFS still retained the discretion whether to enforce the permit conditions, but was not required to do so. *Id.* And the plaintiffs did not "allege any reason to believe" that the agency would, in fact, "enforce the permit

conditions if the plaintiffs received all the relief they requested, namely an injunction requiring the agency to rescind its interpretation of" the statute or "declaratory relief that the agency's interpretation of the statute is unreasonable." *Id.* Put differently, even if the Court declared that the agency had misinterpreted the statute and that the agency actually had jurisdiction to enforce the permit conditions, the plaintiffs had not shown that the agency would do anything different with respect to enforcing the permit conditions on remand.

HUD argues that Plaintiffs here have failed to establish redressability for similar reasons. HUD explains that, like in *Marino*, the relevant statutory language is phrased in permissive terms: the Act states that HUD "*may*" issue vouchers under certain circumstances, but does not require HUD to do so. 134 Stat. at 1869 (emphasis added). And HUD maintains that it has no intention of issuing Plaintiffs vouchers.

Contrary to HUD's arguments, Plaintiffs have demonstrated that their claimed injuries—being forced to live in uninhabitable conditions despite HUD's obligation to maintain its Section 8 properties—are redressable. In reviewing questions about a plaintiff's standing, we "must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003); *see also In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008). Here, Plaintiffs allege that HUD's failure to provide them with vouchers is itself unlawful because it violates HUD's statutory and regulatory obligations and constitutes unconstitutional intentional discrimination. Assuming that those contentions are correct, Plaintiffs' injuries would be redressed "if the plaintiffs received all the relief they

requested"—namely, an injunction requiring HUD to provide them with vouchers. *Marino*, 33 F.4th at 597. Thus, this case differs from *Marino* in a key way: while the *Marino* plaintiffs challenged an agency's interpretation of a statute as unreasonable and requested an order requiring the agency to reconsider that interpretation, here, the Plaintiffs challenge an agency action as itself unlawful and request an order forcing the agency to act differently. Assuming that Plaintiffs are correct on the merits of their claims, their injuries would be redressed by a favorable order by this Court. Nothing more is required to demonstrate standing.

## III.

Although we have held that the District Court erred in dismissing Plaintiffs' claims on jurisdictional grounds, that does not end the matter: we "could nonetheless affirm the dismissal if dismissal were otherwise proper based on failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In determining whether a complaint fails to state a claim, we must accept Plaintiffs' allegations as true and draw all inferences in their favor. *See id.* at 625. "We do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). "So long as the pleadings suggest a 'plausible' scenario to 'show that the pleader is entitled to relief,' a court may not dismiss." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (brackets and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Applying these principles here, we believe that Plaintiffs have failed to state a claim upon which relief could be

granted. To begin with, we think that the only relief Plaintiffs articulated with sufficient particularity in their complaint is their claim that HUD must provide them with vouchers. As the District Court explained, Plaintiffs' complaint at times seems to gesture at a broader discrimination claim against HUD and perhaps to challenge more agency conduct than solely HUD's voucher decision. But the only specific agency action Plaintiffs point to in their complaint is HUD's decision not to provide them with vouchers—and the only relief Plaintiffs articulate with any degree of specificity is the issuance of those same vouchers. Further, if there were any doubt that Plaintiffs are solely focused on obtaining vouchers, Plaintiffs' briefing in the District Court confirms the point: in response to HUD's motion to dismiss and in a later motion to alter or amend the District Court's opinion dismissing their claims, Plaintiffs raised arguments concerning only the voucher issue, not any other claim or agency conduct.

Thus, the determinative question is whether Plaintiffs have stated a claim that they are entitled to vouchers. As we have explained, those vouchers are available to individuals like Plaintiffs only where "the owner has received a Notice of Default and the units pose an imminent health and safety risk to residents." 134 Stat. at 1869. While the District Court erred in addressing the issue in jurisdictional terms, we agree with its underlying conclusion that the sale of Sandpiper Cove left HUD without statutory authority to issue vouchers to Plaintiffs because, even assuming the units pose a health and safety risk to residents, "the owner" of Sandpiper Cove— Winnie Street—has not received a Notice of Default.

To begin, the plain text of the Act dictates that vouchers are available to individuals like Plaintiffs only where the *current* owner of the relevant units has received a Notice of Default. Significantly, the Act limits HUD to providing

vouchers only where "*the* owner" has received a Notice of Default. *Id.* (emphasis added). It "is a rule of law well established that the definite article 'the' particularizes the subject which it precedes." *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4–5 (D.C. Cir. 2000) (citation omitted). Here, the particularizing function of the word "the" in the Act is clear: "the owner" of a property is the entity that owns the property.

Plaintiffs resist this straightforward reading of the statutory text. They emphasize that the relevant statutory text is phrased in the present perfect tense—that is, the Act states that vouchers are available only where "the owner *has received* a Notice of Default." 134 Stat. at 1869 (emphasis added). In Plaintiffs' view, Congress's choice of the present perfect tense indicates its intent to include events that occurred in the past; it is accordingly sufficient under the Act for any *previous* owner of a property to have received a Notice of Default.

Plaintiffs' contention misses the mark. While "Congress'[s] use of a verb tense is significant in construing statutes," *United States v. Wilson*, 503 U.S. 329, 333 (1992); *see also Carr v. United States*, 560 U.S. 438, 448 (2010), Plaintiffs misapprehend the import of the present perfect tense in the Act to the facts of this case. The present perfect tense is, as Plaintiffs contend, used to describe an act that was completed at some point in the "indefinite past" or a "past action that comes up to and touches the present." THE CHICAGO MANUAL OF STYLE ¶ 5.132 (17th ed. 2017); *see also, e.g., Emerald Mines Co. v. Fed. Mine Safety and Health Rev. Comm'n*, 863 F.2d 51, 56 n.5 (D.C. Cir. 1988) (noting that the present perfect tense can indicate either an "action that began in the past but continues into the present" or a "past action[] that ha[s] been completed"); *Barrett v. United States*, 423 U.S. 212, 216 (1976) (noting that the present

perfect tense denotes "an act that has been completed"). Plaintiffs' proffered interpretation ignores, however, that the subject of the present perfect tense in the Act is "the owner" of Sandpiper Cove—Winnie Street. And Winnie Street has *never* received a Notice of Default.

Thus, vouchers are available under the Act only where the *current* owner of the relevant units "has received a Notice of Default." 134 Stat. at 1869. Plaintiffs' complaint is devoid of facts showing that that condition has been met here. Plaintiffs did not allege that Winnie Street has been issued a Notice of Default; rather, Plaintiffs' complaint explicitly refers to Compass Pointe as the "prior owner" of Sandpiper Cove and refers only to the Notice of Default that was issued to Compass Pointe. Plaintiffs contend on appeal that even if Winnie Street was never directly issued a Notice of Default, the original Notice of Default that was issued to Compass Pointe "transferred" to Winnie Street upon the sale of Sandpiper Cove. But Notices of Default do not necessarily transfer to new owners. And Plaintiffs did not allege in their operative complaint that the Notice of Default had, in fact, transferred. Nor did they allege any facts tending to indicate that such a transfer occurred.

In sum, based on the facts alleged in Plaintiffs' complaint, Plaintiffs have failed to "suggest a 'plausible' scenario" showing that they are entitled to relief. *Atherton*, 567 F.3d at 681 (citation omitted). We accordingly hold that Plaintiffs have failed to state a claim upon which relief could be granted and affirm the District Court's dismissal of their claims.

*So ordered.*